## THE HAROLD L.
## THE RUSSELL NO. 7.

### BALDWIN v. NEWTOWN CREEK TOWING CO.
### No. 383.

Circuit Court of Appeals, Second Circuit.
May 9, 1932.

William F. Purdy, of New York City (Edmund F. Lamb, of New York City, of counsel), for appellant.

Alexander, Ash & Jones, of New York City (Edward Ash, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

PER CURIAM.

This case presents a narrow question as to the duties of a tug towards its tow, the facts being undisputed. The libelant's barge was made fast to a pier-end by a seven-inch hawser, the eye of one end of which was over

a cleat on deck. The line was bent around a bitt on the dock and led again to the same cleat, where it was made fast. Along the starboard side of the barge another was made fast; a second was on her port side; a third tailed to her stern; all were headed into the ebb tide. When the tug which had the flotilla in charge was ready to take it out, she directed the bargee to cast off the hawser. The tide had fallen so that the lead to the bitt on the dock was not horizontal, but passed over the edge of the dock, and the bargee was unable to handle it alone. The tug therefore ordered him to cast off the end which was made fast to the cleat, and to let the hawser pay out around the bitt, as the tug pulled the flotilla away from the dock. The hawser fouled in some unknown way as it was running out, stopped the barge, and snapped it back against the dock, causing the injuries complained of.

The single question is whether the tug should have apprehended this consequence when she gave the order to the bargee to cast off in the way he did. The judge thought not, and the question is no doubt debatable, but, though often not so classed, is one of law; that is, as to what duties the facts imposed. It appears to us that what happened was not so improbable as to exonerate the tug which was prima facie responsible for collisions of her tow when under way. It is true that normally the free end of a hawser would pay out around the end of a bitt without catching beneath the edge of the dock and the lead from the bitt to the barge. If it did catch, however, the strain upon the lead would hold it. The free end might fall upon the dock between the bitt and the edge and be drawn over the edge by the paying out of the lead. That would be improbable, unless some slack were thrown upon the dock, but even that might happen if it were whipped upon the dock and lay for an instant beneath the lead. If the end cast off were the upstream lead, it would be more likely to catch. As the tug pulled the flotilla forward and away from the dock, the free end would dangle over the edge, but the lead that remained would move forward and might override the free end. All this is indeed speculative, but the duty of explanation rested on the tug and she made none. It appears to us that the method used was slack and unseamanlike, and that the tug must accept the risks of its miscarriage.

Decree reversed; cause remanded, with instructions to enter a decree for the libelant.